UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TWEED-NEW HAVEN AIRPORT AUTHORITY <br> *Plaintiff* <br><br> v. <br><br> GEORGE JEPSEN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF CONNECTICUT <br> *Defendant* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO. 3:15-cv-01731-VLB <br><br><br><br><br><br><br><br> August 22, 2016 |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT, GEORGE JEPSEN, ATTORNEY GENERAL FOR THE STATE OF CONNECTICUT

**A.   PLAINTIFF HAS NOT SATISFIED ELEVENTH AMENDMENT OR TRADITIONAL ARTICLE III STANDING REQUIREMENTS.**

Plaintiff asserts that "to bring a declaratory judgment action based on a violation of the Supremacy Clause, a plaintiff need only show that there is a conflict between the state statute and federal regulations. A plaintiff does not, as the defendant claims, have to expose itself to liability (i.e. injury) before bringing an action or claim irreparable harm." Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss ("Plaintiff's Brief"), at p. 8. Defendant makes no such claim but rather merely asserts that, consistent with 11th Amendment pleading standards and traditional requirements for Article III standing, Plaintiff must allege a substantial, nonfrivolous claim that concerns a direct injury arising from state conduct.[1] Cases cited to by Plaintiff in its brief support this conclusion.

---

[1] Plaintiff is correct in asserting that it need not seek injunctive relief, and that *Ex Parte Young* may apply in a suit seeking prospective relief regardless of whether the relief sought is declaratory or injunctive. Plaintiff's Brief, at p. 7. However, the injunctive relief cases cited in Defendant's brief are instructive on the question of whether an injury is sufficient to confer standing under Article III. In fact, some of the language employed in these cases is identical to that used in a case cited by Plaintiff. Compare *O'Shea v. Littleton*, 414 U.S. 488, 494 ("[t]he

First, Defendant agrees that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (citation omitted); see *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d. Cir. 2007)(same); see Plaintiff's Brief, at p. 4. Plaintiff fails to recognize, however, that the Second Circuit has defined such an inquiry as one that involves a determination of whether the alleged ongoing violation is "a substantial and not frivolous claim." See *In re Deposit Ins. Agency*, at 621 (citing *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 374 (2d Cir. 2005)).

Plaintiff fails to allege a "substantial and not frivolous" claim of an ongoing violation of federal law. Additional allegations not addressed in Defendant's principal brief do not bolster Plaintiff's claims. For example, Plaintiff's allegation that the length of Runway 220 affects service and safety "for *almost all* commercial aircraft" implies that it is in fact safe for and does not adversely affect the service of existing commercial airlines. See Complaint, at ¶ 24 (emphasis added). Similarly, the allegations that runway extension is necessary to "comply with federal safety regulations" and that it "negatively affect[s]" such compliance are not supported by any substantial allegations identifying how the runway is currently noncompliant or undermines compliance for its existing services. See *id.*, at ¶¶ 31, 35. In contrast, the Second Circuit in *Dairy Mart* recognized an ongoing violation where the plaintiff alleged that a state official presently refused to accept timely filed claims for reimbursement mandated by state law for

---

injury or threat of injury must be both real and immediate, <u>not conjectural or hypothetical</u>.")(citations and internal quotations omitted)(emphasis added); with *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 630 (10th Cir. 1998)("to show an injury-in-fact," the plaintiff must prove "invasion of a judicially cognizable interest that is . . . <u>not conjectural or hypothetical</u>.")(emphasis added).

2

underground storage tank cleanup costs. *Id.*, 411 F.3d at 369, 373. Accordingly, the allegations set forth in Plaintiff's Complaint do not constitute substantial claims of ongoing violations of federal law.

Further, Connecticut federal courts have made it clear that Plaintiff's prospective relief "must address an ongoing or threatened violation of federal law. . ." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands and Watercourses Comm'n*, 632 F.Supp.2d 185, 187-88 (D.Conn. 2009)(citing *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000)). In *Goodspeed*, the plaintiff airport brought a declaratory judgment action against the state commissioner of environmental protection claiming that the state Inland Wetlands and Watercourses Act and the Connecticut Environmental Protection Act were preempted by federal aviation law, thereby preventing the plaintiff from cutting and removing trees from its property due to their proximity to state wetlands. *Id.*, at 186-87. The district court granted the State's motion to dismiss on 11th Amendment grounds. *Id.*, at 189. Crucial to the Court's decision was the fact that the plaintiff had merely claimed that the state "could" invoke the two statutes "should" the plaintiff remove the trees, and the fact that the plaintiff had failed to allege that the state threatened or was about to commence an action against it. *Id.*, at 188-89 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)("a conjectural injury cannot warrant equitable relief.").

Here, Plaintiff's allegations are as conjectural as those alleged in *Goodspeed* because it has at best alleged that the state could invoke Conn. Gen. Stat. § 15-120j(c) should it decide to lengthen Runway 220. See Defendant's Memorandum of Law ("Defendant's Brief"), at pp. 11-12. Similarly, Plaintiff has failed to allege that the state has threatened or is about to commence an enforcement action against it. In accordance with *Goodspeed*, Defendant's motion to dismiss

3

should be granted on 11th Amendment grounds. See *Goodspeed*, 632 F.Supp. at 189 (citing *Wang v. Pataki*, 396 F.Supp. 446, 454 (S.D.N.Y. 2005)(dismissing claim on Eleventh Amendment grounds because although the plaintiffs "ha[d] suggested that the Attorney General might, at some future date, commence criminal proceedings against [them] for unlicensed operation of an [apartment information vendor] business," those allegations "fail because a wholly speculative threat of future prosecution is not actionable").

Second, Plaintiff's brief includes cases showing that a consideration of traditional Article III standing requirements is proper in determining whether a case is barred by the 11th Amendment. In *Benjamin v. Malcolm*, 803 F.2d 46 (2d Cir. 1986), the Second Circuit only exercised jurisdiction after identifying a "direct injury" faced by the City of New York. *Id.*, at 54. The "direct injury" alleged by the City consisted of contempt sanctions for noncompliance with an existing court order, exposure to millions of dollars of cost for additional prison space based on the state's ongoing refusal to receive "state-ready" prisoners, as well as the threat of *another* major prison riot due to such overcrowded conditions. *Id.* In this case, Tweed is faced with no analogous direct injury despite the hypothetical injuries it alleges. In *Benjamin*, the court logically referred to the threat of a major riot because of previous rioting. In this case, Tweed points to no previous conflicts or issues that would bolster its speculative allegations of hypothetical injuries. Instead, it alleges possible, not probable injuries that can only be reached by inferring from one hypothetical to another, and so on, until the resultant injury alleged would actually occur.

Similarly, in the two cases that Plaintiff chiefly relies on to support its political subdivision argument (*Rogers* and *Branson*), those courts also addressed traditional Article III standing requirements. The Tenth Circuit, in *Branson*, did not limit the standing inquiry to an

4

11th amendment standing analysis or a political subdivision standing analysis. Instead, that court also considered whether the plaintiffs demonstrated the necessary "injury in fact" to establish Article III standing. *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 630 (10th Cir. 1998). "It is well-settled today that the core requirements for showing a 'case or controversy' under Article III are three-fold: A plaintiff must allege (1) an 'injury-in-fact,' (2) a causal connection between the injury and defendant's actions, and (3) redressability of the injury." *Id.* (citations omitted). The burden is on the plaintiff to prove "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations and citations omitted)(emphasis added). The Fifth Circuit, in *Rogers*, acknowledged the line of U.S. Supreme Court cases on the political subdivision question, and then stated: "[b]ut before we can discuss these decisions, we must decide whether [the plaintiff] can bring this suit under the more general principles developed by the Supreme Court to govern standing in all federal cases." *Rogers v. Brockette*, 588 F.2d 1057, 1060 (5th Cir. 1979). The court said that one of those principles was that "a claim must present a genuine, live case or controversy under Article III." *Id.* (footnotes omitted). The court further stated that "[o]ne aspect of the requirement of a genuine case or controversy is the principle that a federal court may not resolve 'hypothetical or contingent questions." *Id.* at 1063 (citing *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945))(emphasis added).

Accordingly, close examination of decisions cited in Plaintiff's brief reveals that Article III standing requirements do not initially require a showing that there is a conflict between state and federal law, but instead require an allegation of an actual "injury-in-fact" that does not raise "contingent conditions." As addressed above and in Defendant's principal brief, Plaintiff fails to meet such standing requirements because it has alleged and asked this Court to resolve

5

hypothetical injuries. See Defendant's Brief, at pp. 11-12; see e.g. Plaintiff's Complaint, at ¶ 27 (Commercial service at the Airport is "not only jeopardized" but "*may* be terminated in the future.")(emphasis added), and at ¶ 26 (Plaintiff "understands" that aircraft providing current service "will be phased out in the near future and replaced with an aircraft that will require a longer runway . . .").

### B. DECISIONS FROM THE SECOND AND NINTH CIRCUIT COURTS PROVIDE MORE GUIDANCE THAN DECISIONS FROM THE FIFTH AND TENTH CIRCUIT COURTS ON THE ISSUE OF WHETHER A POLITICAL SUBDIVISION CAN SUE ITS CREATOR STATE.

In its brief, Plaintiff acknowledges the Circuit Court split that emerged after *Gomillion v. Lightfoot*, 364 U.S. 339, 344-45, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) on the issue of whether a political subdivision can sue its creator state, but Plaintiff has no response to *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009), where the Court recently reverted to its maximalist reading of state control over political subdivisions. In *Ysursa*, the Court reaffirmed the principles of *Williams* and *City of Trenton*, that "a political subdivision . . . has no privileges or immunities . . . which it may invoke in opposition to the will of its creator," and that such subdivisions are "merely . . . department[s] of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit." *Id.*, at 362-64 (citing *Williams v. Mayor*, 289 U.S. 36, 40, S.Ct. 431, 77 L.Ed. 1015 (1933) (internal citations omitted); *City of Trenton v. New Jersey*, 262 U.S. 182, 187, 43 S.Ct. 534, 67 L.Ed. 937 (1923)).

The Second Circuit has adopted a similarly maximalist reading. In *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), the Second Circuit held that New York City "lack[ed] standing to assert constitutional claims against the State." *Id.*, at 1101. In *New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973), the Second Circuit held that the *Williams* rule

6

"remains controlling authority when the challenged statue is the work of a State legislature." *Id.*, 473 F.2d at 929 (citing *Aguayo*, 473 F.2d 1090 (2d Cir. 1973)).

The one case Plaintiff cites as an exception to the Second Circuit's general rule is *Benjamin v. Malcolm*, 803 F.2d 46 (2d Cir. 1986). For the reasons discussed earlier in this brief, ante, at p. 4, Plaintiff's case is readily distinguishable from *Benjamin*. In that case, the Second Circuit only found standing after identifying a "direct injury" faced by the City of New York. *Id.*, at 54. The facts of that case, and the variety of injury involved (direct injury consisting of contempt sanctions, exposure to millions of dollars of cost for additional prison space, and the threat of another major prison riot) are completely inapposite to the speculative prospective injuries alleged in Plaintiff's case. For these reasons, Plaintiff's case cannot be an exception to the Second Circuit's general rule.

Plaintiff acknowledges that a more factually analogous case to this one is *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360 (9th Cir. 1998). Plaintiff's Brief, at p. 18; Defendant's Brief, at pp. 15-16. Still, Plaintiff asks the Court to align itself with the Fifth (*Rogers*) and Tenth (*Branson*) Circuits instead. Plaintiff asserts that its claim is "similar in all material respects" to the claim in *Rogers* and *Branson*. Plaintiff's Brief, at p. 19. However, those cases are unmistakably factually dissimilar. In *Branson*, school districts and students sought injunctive relief to enjoin enforcement and implementation of an amendment to the Colorado Constitution concerning the trusteeship of public lands. *Branson*, supra, 161 F.3d at 625-27. In *Rogers*, a school district sought injunctive and declaratory relief in challenging the constitutionality of a state statute which required certain districts to take part in a subsidized breakfast program. *Rogers*, supra, 588 F.2d at 101059-60. By contrast, in *Burbank*, the Ninth Circuit denied the plaintiff airport's Supremacy Clause claim seeking to preclude the defendant

city from reviewing airport expansion plans as authorized by state statute on the grounds that a political subdivision of the state lacked standing to sue other political subdivisions. *Id.*, at 1361. Clearly, *Burbank* is far and away the case most factually akin to this action and should therefore provide sound guidance for the Court on the political subdivision question.

### C. FURTHER EVIDENCE THAT PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

#### 1. The 2008 Tweed Decision Supports Defendant's Contention That Conn. Gen. Stat. § 15-120j(c) Is Not Impliedly Preempted By The FAAct.

The current case is distinct from *Tweed-New Haven Airport Auth. v. Town of East Haven*, 582 F. Supp. 2d 261 (2008) because, as Plaintiff cites in its brief, the court determined that "[t]he defendants' regulations would have prevented Tweed from meeting FAA standards and, therefore, were preempted." See Plaintiff's Brief, at p. 23; see *id.*, at 270 ("Because the RSA's [runway safety areas] are being created for the purpose of meeting the FAA safety standards and the Runway Project is being done within Authority property, the court finds that the East Haven defendants' regulations, as applied to the Runway Project, are preempted by the FAAct.").

This distinction of identifying a federal mandate requiring compliance was critical to the Second Circuit's ruling against preemption in *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses*, 634 F.3d 206, 210 (2d Cir. 2011). There, the plaintiff sought a declaratory judgment that would allow it to cut down trees at its airport without obtaining permits from the town Inland Wetlands and Watercourses Commission ("IWWC") as authorized under the Connecticut Environmental Protection Act ("CEPA"). *Id*, at 207-09. Although the court determined that Congress intended to occupy the field of air safety under the FAAct, it narrowed its inquiry by examining "at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted." *Id.*, at 210-11. In determining that the

8

IWWC and CEPA were not preempted by the FAAct, the court characterized the regulations at issue in *Tweed* as constituting "a much more direct intrusion of local authority on the preempted field of air safety than ... the regulatory actions challenged here." *Id.*, at 211. In reaching its conclusion, the court emphasized the fact that, unlike *Tweed*, where "the construction project was approved, indeed, required, by the federal authority," in *Goodspeed*, "no federal agency has approved or mandated the removal of trees from its property." *Id.*

Similarly, in this case, there are no allegations that the lengthening of Runway 220 is *required* by any federal authority to comply with federal aviation safety standards. In fact, despite Plaintiff's allegation that its Airport Layout Plan ("ALP") has been approved by the FAA and the State, there is no allegation that the FAA has attempted to enforce its implementation since such approval. See Complaint, at ¶ 18. As a result, Plaintiff has failed to allege sufficient facts necessary for this Court to conclude that Conn. Gen. Stat. § 15-120j(c) is impliedly preempted by the FAAct.

### 2. Plaintiff's Principal Case Cited To Show That Conn. Gen. Stat. § 15-120j(c) Is Preempted By The AAIA Can Be Distinguished From The Current Case.

Regarding the AAIA, Plaintiff cites to *City of Oceanside v. AELD, LLC*, 740 F. Supp. 2d 1183 (S.D. Cal. Sept. 28, 2010), and suggests that its own case "is on all fours with *City of Oceanside*." Plaintiff's Brief, at p. 34. But that case is easily distinguishable from this one. Plaintiff's case involves a state statute limiting runway length, whereas *City of Oceanside* involved a land condemnation and the buy-back provision of a private settlement agreement. *Id.*, at 1185-86. Consequently, that case did not invoke 11th amendment or political subdivision concerns that are present in Plaintiff's case. Plaintiff may point to *City of Oceanside* for a more limited analogy, but to suggest that it is "on all fours" with its own case is simply not supported by the facts or law of that case.

## D.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss all Counts in Plaintiff's declaratory judgment action.

DEFENDANT

GEORGE JEPSEN
ATTORNEY GENERAL FOR THE
STATE OF CONNECTCUT

GEORGE JEPSEN
ATTORNEY GENERAL

BY:     _____
Drew S. Graham
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel:  (860) 808-5090
Fax:  (860) 808-5384
Federal Bar No. ct16741
E-mail: drew.graham@ct.gov

10

## CERTIFICATION

I hereby certify that on August 22, 2016, a copy of the foregoing Reply Memorandum of Law In Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> John C. King, Esq.
> Hugh I. Manke, Esq.
> Christopher A. Klepps, Esq.
> Updike, Kelly & Spellacy, P.C.
> 100 Pearl Street
> Hartford, CT 06123
> P: (860) 548-2600
> **jking@uks.com**
> **hmanke@uks.com**
> **cklepps@uks.com**

                                                                                               _/s/ Drew S. Graham_
                                                                                               Drew S. Graham
                                                                                               Assistant Attorney General

11