UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TWEED-NEW HAVEN AIRPORT          :
AUTHORITY,                       :
                                 :
    Plaintiff,                   :
                                 :
v.                               : CASE NO. 3:15cv01731 (RAR)
                                 :
GEORGE JEPSEN, IN HIS            :
OFFICIAL CAPACITY AS ATTORNEY    :
GENERAL FOR THE STATE OF         :
CONNECTICUT                      :
                                 :
    Defendant.                   :

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff, Tweed-New Haven Airport Authority, brings this action seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  (Dkt. # 1).  Defendant, State of Connecticut Attorney General George Jepsen, in his official capacity, moves to dismiss the action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). (Dkt. # 39).  For the following reasons, defendant's motion to dismiss is denied.

## FACTUAL BACKGROUND

The following facts are taken from plaintiff's Complaint for Declaratory Relief ("complaint"), and are presumed true for

1

the purposes of the pending motion.  Plaintiff, Tweed-New Haven
Airport Authority ("Tweed") is a public instrumentality and
political subdivision of the State of Connecticut, pursuant to
Connecticut General Statutes § 15-120i, et seq.  (Dkt. # 1, at ¶
5).  The City of New Haven owns the Airport property and leases
it to the Airport Authority.  (Id., at ¶ 12).  The Airport is
situated in both East Haven and New Haven.  (Id., at ¶ 13).  The
Airport's main runway runs north/south and is referred to as
"Runway 2/20."  (Id., at ¶ 13).  The runway is approximately
5,600 linear feet, with Runway 2 at the South end and Runway 20
at the North end.  (Id., at ¶¶ 13, 19).

     The Airport is among the public use airports included in
the National Plan of Integrated Airport Systems.  (Id., at ¶
14).  The Airport is classified by the Federal Aviation
Administration ("FAA") as a primary commercial service airport
and it holds a Part 139 certification to provide regularly
scheduled passenger air service.  (Id., at ¶ 14).  The Airport
Authority has accepted tens of millions of dollars in grants
from the FAA for construction and maintenance of facilities, the
acceptance of which requires compliance with a long list of
federal statutes and regulations.  (Id., at ¶¶ 15, 16).

     The Airport consists of numerous structures, including an
airport terminal, an administration building, hangars and
offices leased to a fixed base operator, an air rescue and fire

safety facility, a control tower, and two runways with related taxiways.  (Id., at ¶ 17).  All of these structures are part of the Airport Layout Plan ("ALP"), and any modifications of the ALP require the approval of the FAA.  (Id., at ¶ 18).  The FAA requires that each airport with a 139 certification develop a Master Plan.  (Id., at ¶ 20).  Tweed has a Master Plan for the Airport, which identifies future improvements for the Airport, and which was approved by the State of Connecticut and by the FAA in 2002.  (Id., at ¶¶ 20, 21).

In 2009, the State of Connecticut, through Public Act 09-7, amended Connecticut General Statutes § 15-120j by adding subsection (c), which provides: "[n]otwithstanding the provisions of subsections (a) and (b) of this section, Runway 2/20 of the airport shall not exceed the existing paved runway length of five thousand six hundred linear feet."  (Id., at ¶ 22).  The current length of Runway 2/20, at 5,600 linear square feet, "remains too short for almost all commercial aircraft to operate regularly scheduled service in a safe and commercially reasonable manner."  (Id., at ¶ 24).

Currently scheduled commercial service at the Airport is provided by a single type of aircraft, and the Authority understands that this type of aircraft will be phased out in the near future and replaced with an aircraft that will require a longer runway than the current Runway 2/20.  (Id., at ¶ 26).

Thus, "regularly scheduled service at the airport is not only jeopardized at the moment but also may be terminated in the future if the length of Runway 2/20 is not extended." (Id., at ¶ 26).

Numerous airlines have notified the plaintiff that they would like to bring regularly scheduled service to the Airport, but that they cannot do so until Runway 2/20 is lengthened. (Id., at ¶ 28). The Airport has not attracted any new commercial carriers since 2009 and service remains low. (Id., at ¶ 29). The length of Runway 2/20 is a "key factor" in both of these circumstances. Id.

The Authority has started planning a runway extension project to increase the functional length of Runway 2/20, including using private funds to hire a consulting engineering firm to conduct a preliminary Environmental Assessment. (Id., at ¶ 32). However, the FAA has refused to provide funding for the project or to review the alternative layouts presented in the preliminary Environmental Assessment while there is a state law that limits the length of Runway 2/20. (Id., at ¶ 33).

Plaintiff alleges that "[b]y restricting the length of Runway 2/20, Connecticut General Statutes §15-120j(c) attempts to regulate aviation safety and the service capacity at the Airport, a field occupied by the United States Government." (Id., at ¶ 57). Plaintiff adds that "[a]ny enforcement of

4

Connecticut General Statutes §15-120j(c) is an illegal usurpation of federal jurisdiction in violation of the Supremacy Clause, Art. VI, cl. 2, of the United States Constitution. (Id., at ¶ 62).

## LEGAL STANDARD

A Rule 12(b)(1) motion seeks dismissal for lack of subject matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).  "When considering a motion to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint.  Shipping Fin. Servs. Corp v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  However, "[t]he burden of proving jurisdiction is on the party asserting it."  Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

Specifically, "[t]he party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." Augienello v. F.D.I.C., 310 F. Supp. 2d 582, 587-88 (S.D.N.Y. 2004).  On a Rule 12(b)(1) motion, "the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings."  Id. at 588.

A Rule 12(b)(6) motion seeks dismissal for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  "When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the

complaint and draws inferences from these allegations in the light most favorable to the plaintiff." Kinney v. Connecticut, 622 F. Supp. 2d 1, 5 (D. Conn. 2009)(citations omitted). "Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted." Id.

## DISCUSSION

### A.   Article III Standing

The defendant argues in its reply brief that the plaintiff fails to satisfy traditional Article III standing requirements because it fails to allege a non-hypothetical injury.  (Dkt. # 45 at 4-6).

Article III, § 2 of the United States Constitution restricts federal courts to deciding "'Cases' and 'Controversies.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992).  The "case-or-controversy requirement is satisfied only where a plaintiff has standing." Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008).  "Three elements comprise the 'irreducible constitutional minimum' of standing: (1) the plaintiff must have suffered an injury-in-fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the challenged conduct; and (3) it must be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev., 651 F.3d 218, 228 (2d Cir. 2011), aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013).

"The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561. However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id.

In arguing that the plaintiff fails to satisfy the elements of Article III standing, the defendant focuses specifically on the injury in fact requirement. See Dkt. # 45 at 4-5.  In support of its argument, the defendant cites Benjamin v. Malcolm, 803 F.2d 46 (2d Cir. 1986), in which detainees claimed that overcrowded prison conditions in a detention facility operated by the City of New York violated their constitutional rights.  The Court found that the City had standing because it faced a "direct injury."  Id. at 54.  The Court noted that the City would face contempt sanctions for noncompliance with an existing court order, the City also would be forced to spend

7

millions of dollars for additional prison space, and faced the threat of a major riot at the detention facility due to the overcrowded conditions.  Id.

The defendant also cites Rogers v. Brockette, 588 F.2d 1057, 1059 (5th Cir. 1979) and Branson Sch. Dist. RE-82 v. Romer, 161 F.3d 619 (10th Cir. 1998), in support of the proposition that an injury in fact cannot be hypothetical.  In Rogers, 588 F.2d at 1057, a school district brought an action against the state and others challenging the constitutionality of a state statute which required certain school districts to participate in subsidized breakfast program.  In determining whether the plaintiffs satisfied Article III standing, the Fifth Circuit stated that a federal court may not resolve 'hypothetical or contingent questions.'"  Id. at 1063.

In Branson, 161 F.3d at 630, the Tenth Circuit held that three Colorado school districts had standing to challenge an amendment to the Colorado Constitution which altered the terms of the trust in which Colorado places school land for the benefit of public schools.  Plaintiff alleged that the revisions injected a series of conflicting interests into the management of the school lands trust.  The court held that the school districts had alleged a "sufficient actual and particularized injury to their legal interests."  Id. at 631.

8

The Court finds, contrary to the defendant's argument, that Tweed has demonstrated a direct injury that is both actual and imminent.  During oral argument, the plaintiff asserted that it had a judicially cognizable injury and cited a variety of examples, including chronically low service levels, specific lost business opportunities, and an inability to comply with federal grant requirements. (*See* also Dkt. # 1, ¶¶ 28-31). Thus, the Court finds that the plaintiff has alleged a concrete and direct injury, including the current and future loss of business and an inability to comply with federal grant requirements.  The plaintiff has also shown that this injury is both actual and imminent, because the plaintiff is already experiencing its effects.  As a result, the Court finds that the plaintiff has satisfied its burden of establishing Article III standing.

## B. <u>Eleventh Amendment Immunity</u>

The defendant argues that the Court lacks subject matter jurisdiction over this lawsuit under the Eleventh Amendment of the United States Constitution and the principles of sovereign immunity. In this respect, the defendant argues that the plaintiff's claim does not fall within one of the exceptions to sovereign immunity.  (Dkt. # 40 at 6-13).  The plaintiff responds that it's claim falls under the <u>Ex parte Young</u> exception to the Eleventh Amendment.  (Dkt # 44 at 4-10).

The principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III of the Constitution.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984).  Under the Eleventh Amendment, a state is immune from suits in federal court brought by its own citizens, and such immunity extends to officers acting on behalf of the state, and to state agencies.  *See* Deadwiley v. New York State Office of Children & Family Servs., 97 F. Supp. 3d 110, 115 (E.D.N.Y. 2015).  There are only three exceptions to this rule: (1) a state may waive its Eleventh Amendment defense; (2) Congress may abrogate the sovereign immunity of the states by acting pursuant to a grant of Constitutional authority; or (3) under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit against a state official when the suit seeks relief that is properly characterized as prospective.  Deadwiley, 97 F. Supp. 3d at 115.  "A plaintiff may use Ex Parte Young to seek injunctive or declaratory relief, but the relief must address an ongoing or threatened violation of federal law and be prospective only."  Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n, 632 F. Supp. 2d 185, 187 (D. Conn. 2009) (citations omitted); *see also* Friends of the East Hampton Airport, Inc. v. Town of East Hampton, 841 F.3d 133, 144 (2d Cir. 2016).

The doctrine of Ex Parte Young "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law" and it is "regarded as carving out a necessary exception to Eleventh Amendment immunity." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).  Thus, "[r]ather than defining the nature of Eleventh Amendment immunity, Young and its progeny render the Amendment wholly inapplicable to a certain class of suits." Id.  In determining whether plaintiff's claim falls under the Ex parte Young exception, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002).[1]

Plaintiff asserts that its claim "fits squarely within the Ex Parte Young exception," because it alleges that Connecticut General Statutes § 15-120j(c) violates the Supremacy Clause of the United States Constitution by impermissibly regulating areas within the exclusive jurisdiction of the federal government.

---

[1] The Court does not address the defendant's arguments regarding whether the State waived its Eleventh Amendment immunity or whether Congress abrogated the sovereign immunity of the state by acting pursuant to a grant of Constitutional authority, because the plaintiff makes no such claims.  The plaintiff argues solely that its claim falls under the *Ex parte Young* exception to sovereign immunity.

(Dkt. # 44 at 6).  Plaintiff also asserts that it does not seek money damages or any other type of retroactive relief, but instead seeks prospective relief.  (Dkt. # 44 at 7).

Citing Goodspeed, 632 F. Supp. 2d at 187 (D. Conn. 2009), the defendant argues that plaintiff's claim does not address an ongoing or threatened violation of federal law.  More specifically, the defendant argues that Tweed has not alleged that the state has threatened or is about to commence an enforcement action against it.  (Dkt. # 45 at 3).

In Goodspeed, the plaintiff airport had inland wetlands on its property.  The plaintiff wanted to remove or cut down trees that were within 75 feet of the wetlands because it believed that the trees were obstructions to navigable airspace as defined by federal regulations promulgated under the Federal Aviation Act.  The plaintiff had the option of requesting a permit from the East Haddam Inland Wetlands and Watercourses Commission ("IWWC") but the plaintiff did not want to risk a potential adverse decision by submitting to that process.  Therefore, the plaintiff brought an action against the IWWC and the Commissioner of the Connecticut Department of Environmental Protection for a declaration that the Connecticut Inland Wetlands and Watercourses Act ("IWWA") and the Connecticut Environmental Protection Act ("CEPA") were preempted by federal aviation law.  The district court granted the Commissioner's

motion to dismiss on the basis of the Eleventh Amendment,
because the plaintiff "failed to allege that the Commissioner
[was] involved in an ongoing violation of federal law or [had]
threatened an enforcement action . . . ." Id. at 188.

Specifically, the district court in Goodspeed dismissed the
case as to the Commissioner because the Commissioner explicitly
stated that she had no plans to bring suit: "Unlike the IWWC,
which has represented to the Court that it would take action
against Goodspeed if it proceeded to cut or remove trees in or
near the inland wetlands without a permit . . . the Commissioner
has threatened no such action . . . ." Id. at 188.  Indeed, as
the court noted, the Commissioner had consistently maintained
that it would evaluate the plaintiff's actions and determine
whether an enforcement action was even appropriate after the
plaintiff trimmed or cut down the trees, based on the extent of
the trimming and the location of the trees.  The court further
noted that the plaintiff had previously trimmed trees on its
property without the Commissioner taking any action. Id.

The Court finds that Goodspeed is distinguishable from the
present case.  The defendant in the present case is more akin to
the IWCC, which was not dismissed on Eleventh Amendment grounds,
than it is to the Commissioner in Goodspeed, who was dismissed.
The defendant in the current case, like the IWCC, has at least

13

implied that it will bring suit if Tweed violates Connecticut General Statutes § 15-120j.

The defendant has given no indication that it does not intend to bring suit. Despite the fact that this case has been pending since November of 2015, when the defendant was asked during oral argument if it would bring suit if the plaintiff violated Connecticut General Statutes § 15-120j, the defendant responded that it did not know.  Connecticut General Statutes § 15-120j was amended to specifically restrict the runway length of Airport 2/20.  (Dkt. # 1 at 22).  It seems counterintuitive that the legislature would make such a specific and exacting statutory change if the state did not intend to enforce it. Therefore, the Court disagrees that plaintiff's allegations "are as conjectural as those alleged in Goodspeed."  (Dkt. # 45 at 3).

Additionally, the defendant argues that the plaintiff fails to allege a "substantial and nonfrivolous" violation of federal law.  (Dkt. # 45 at 2).  The plaintiff alleges that Connecticut General Statutes is preempted by the Federal Aviation Act ("FAAct"), the Airline Deregulation Act ("ADA"), and the Airline and Airways Improvement Act ("AAIA").  (Dkt. # 44 at 2).  The Court finds, as discussed in greater detail in Section D of the Court's decision, that Connecticut General Statutes § 15-120j is at least impliedly preempted by the FAAct, because Congress

14

intended to fully occupy the field of airline safety.  (See Dkt. # 1 at 8).  Therefore, the plaintiff's alleged violation of federal law is not frivolous.

Thus, the Court finds that the plaintiff satisfies the requirements of the Ex Parte Young doctrine by alleging an ongoing or threatened violation of federal law and relief that is properly characterized as prospective.

### C.   Political Subdivision

Defendant argues that the plaintiff, as a political subdivision of the state, lacks standing to sue the state. (Dkt. # 40 at 13).  In response, plaintiff argues that despite its status as a political subdivision, "[t]he prohibition on a political subdivision's ability to sue the state does not apply to Supremacy Clause challenges which seek to vindicate the "collective" or "structural" protections afforded by the Supremacy Clause.  (Dkt. 44 at 10).

The defendant cites a variety of cases in support of the proposition that a political subdivision of the state lacks standing to sue that state.  (Dkt. # 40 at 13-16).  In City of Trenton v. New Jersey, 262 U.S. 182, 192 (1923), the Court found that political subdivisions constituted mere creatures of the state, and held that the city could not invoke the Fourteenth Amendment Due Process Clause to prevent New Jersey from enforcing a state law which imposed licensing fees for diverting

15

water from the Delaware River.  In <u>Williams v. Mayor</u>, 289 U.S.
36, 38-40 (1933), the Court held that two cities could not
invoke the Fourteenth Amendment Equal Protection Clause to
prevent Maryland from exempting a railroad from all local taxes.

The defendant suggests that the Second Circuit has "adopted
a *per se* rule that political subdivisions lack standing to sue
their creator states," citing <u>Aguayo v. Richardson</u>, 473 F.2d
1090 (2d Cir. 1973), in which the Second Circuit held that the
city lacked standing to assert constitutional claims related to
individual liberties.  (Dkt. # 40 at 14).  The defendant also
cites <u>New York v. Richardson</u>, 473 F.2d 923 (2d Cir. 1973), in
which the Second Circuit held that political subdivisions could
not challenge a state statute under the Fourteenth Amendment.
Finally, the defendant cites <u>Burbank-Glendale-Pasadena Airport
Auth. v. City of Burbank</u>, 136 F.3d 1360 (9th Cir. 1998), in
which the Ninth Circuit held that a political subdivision lacked
standing to sue its parent state based on a Supremacy Clause
claim.

The plaintiff attempts to distinguish all of these cases by
arguing that these cases only address a political subdivision's
ability to seek redress through the Contract Clause and the
Fourteenth Amendment, and that they say nothing about
plaintiff's standing to bring a claim under the Supremacy
Clause.  The plaintiff asserts that the Second Circuit has not

16

established a *per se* rule that political subdivisions lack standing to sue a state, but that the Second Circuit has merely "reached the unremarkable conclusion that a political subdivision lacks standing to bring a Fourteenth Amendment claim against the state." (Dkt. # 44 at 13). The plaintiff states that the Supreme Court has never held that a political subdivision lacks standing to bring a Supremacy Clause claim against the state in reference to an unconstitutional state statute. (Dkt. # 44 at 11).

The plaintiff notes that the Fifth, Tenth and Eleventh Circuits allow political subdivisions to maintain Supremacy clause claims against their parent states. (Dkt. # 44 at 14). The plaintiff argues that the Ninth Circuit's treatment of this issue is the "outlier not the rule," in that the Ninth Circuit is the only Circuit to bar Supremacy Clause challenges. (Dkt. # 44 at 18).

During oral argument, both parties conceded that there is no case directly on point in the Second Circuit. Nonetheless, the Court is persuaded by the plaintiff's arguments. Since the defendant fails to cite any Second Circuit cases supporting the premise that a political subdivision lacks standing to sue its parent state based upon a Supremacy Clause claim, and the Supreme Court has not ruled directly on the issue and has certainly not adopted a *per se* rule on the issue, the Court is

17

not convinced that the plaintiff lacks standing to sue the state based upon its status as a political subdivision.[2]

### D.   **Preemption**

Finally, defendant claims that plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Connecticut General Statutes § 15-120j(c) is not preempted by FAAct, the ADA, or the AAIA.  (Dkt. # 40 at 16).  Plaintiff responds that it has adequately pled that the Statute is preempted by one or more of the three federal statutes.  (Dkt. # 44 at 20).  During oral argument the parties conceded that if the Court finds that §15-120j(c) is preempted by any one of the three federal statutes, the defendant's motion to dismiss should be denied.

"It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." Hillsborough Cty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985) (citations omitted).  "Federal preemption of state law can be express or implied."  Goodspeed Airport LLC v.

---

[2] *See* Josh Bendor, Municipal Constitutional Rights: A New Approach, 31 Yale L. & Pol'y Rev. 389 (2013), suggesting that the Supremacy Clause properly constrains state power over municipalities.

<u>E. Haddam Inland Wetlands & Watercourses Comm'n</u>, 634 F.3d 206, 209 (2d Cir. 2011) (citations omitted).

"In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, 'where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law'; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." <u>New York SMSA Ltd. P'ship v. Town of Clarkstown</u>, 612 F.3d 97, 104 (2d Cir. 2010). "The key to the preemption inquiry is the intent of Congress." <u>Id.</u>

The plaintiff alleges that §15-120j(c) is impliedly preempted by the FAAct because the FAAct regulates the entire field of airline safety and also because §15-120j(c) impedes the FAAct's objectives. (Dkt. # 44 at 21). Thus the plaintiff alleges field preemption and conflict preemption, both of which are types of implied preemption. (Dkt. # 44 at 26).[3]

Plaintiff argues that Congress occupies and regulates the entire field of airline safety, citing to a recent case in which it made similar allegations against the Town of East Haven. In

---

[3] The plaintiff does not argue that the FAAct expressly preempts §15-120j(c), so the Court will limit its discussion to implied preemption.

Tweed-New Haven Airport Auth. v. Town of East Haven, Conn., 582 F. Supp. 2d 261 (D. Conn. 2008), Tweed-New Haven Airport Authority brought an action against the Town of East Haven, seeking a declaratory judgment that the Town's regulations, which interfered with the Airport's "runway project," were preempted by federal law.

The district court found that "Congress intended to occupy and regulate the field of airline safety." Id. The Court held that the FAAct impliedly preempted the East Haven defendants' regulations because "Congress intended to regulate, i.e., to fully occupy the field of airline safety within which field the Runway Project lies." Id. at 267. In reaching its conclusion, the Court quoted relevant parts of the FAAct:

> Under the FAAct, "the United States has asserted that it possesses and exercises 'complete and exclusive national sovereignty in the airspace of the United States.'" United States v. City of New Haven, 447 F.2d 972, 973 (2d Cir.1971) (quoting the FAAct, 49 U.S.C. § 1508(a), as amended 49 U.S.C. § 40103(a)). The FAAct defines navigable airspace as "including airspace needed to ensure safety in the takeoff and landing of aircraft." 49 U.S.C. 40102(32); see also City of New Haven, 447 F.2d at 973. "This power extends to grounded planes and airport runways." Id. (citing 14 C.F.R. §§ 91.123 and 139.329). Thus, by the passage of the FAAct, Congress intended to occupy the entire field of airline safety, including runways.

Id. at 268 (citations omitted).  The court's findings in Tweed New Haven Airport Authority v. Town of East Haven provide strong support for plaintiff's argument that the FAAct impliedly

preempts Connecticut General Statutes § 15-120j(c).  Section 15-120j(c) attempts to regulate runway length, which is a component part of the field of airline safety, and is therefore part of a field completely occupied by the federal government.

The plaintiff also alleges that Connecticut General Statutes § 15-120j(c) is in actual conflict with the FAAct. (Dkt. # 44 at 26).  The defendant argues that the plaintiff "alleges insufficient facts from which the Court can infer that the impossibility of compliance, and therefore conflict preemption, exists in regard to the FAAct."  (Dkt. # 40 at 27). The Court agrees.  The plaintiff fails to provide any specific examples of a direct conflict between a federal law and a state law.[4]

The Court finds, considering the facts in the light most favorable to the plaintiff, that plaintiff's allegations give rise to the inference that Connecticut General Statutes § 15-120j(c) is impliedly preempted by the FAAct under a theory of field preemption.  Accordingly, the Court need not address whether § 15-120j(c) is preempted by the ADA or the AAIA.

**CONCLUSION**

For the reasons set forth herein, defendant's motion to dismiss is DENIED.

---

[4] When asked during oral argument to provide specific examples of a direct conflict between Connecticut General Statutes § 15-120j(c) and a federal law, the plaintiff did not provide a direct answer.

SO ORDERED at Hartford, Connecticut, this 9th day of
December, 2016.

                              _____/s/_____
                              Robert A. Richardson
                              United States Magistrate Judge